## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FLURESH, LLC,

      Plaintiff,

-vs-

AERCO INTERNATIONAL,
INC. and R.L. DEPPMANN,

      Defendants.

Civil Action No.:

Hon.

*Removed from Kent County Circuit Court, Case No.: 2022-02325-CBB*

---

Joslin E. Monahan (P77362)
**MILLER JOHNSON**
*Attorneys for Plaintiff*
45 Ottawa Avenue SW, Ste. 1100
P.O. Box 306
Grand Rapids, Michigan 49501-0306
(616) 831-1700
Email: monahanj@millerjohnson.com

Thomas J. Connick (0070527)
**CONNICK LAW LLC**
*Co-Counsel for Plaintiff*
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
(216) 364-0512
tconnick@connicklawllc.com

RICHARD S. BARON (P33798)
NICHOLAS J. TATRO (P79146)
**FOLEY, BARON, METZGER & JUIP, PLLC**
*Counsel for Defendant Aerco International*
38777 Six Mile Road, Suite 300
Livonia, Michigan 48152
(734) 742-1800
Email: rbaron@fbmjlaw.com;
ntatro@fbmjlaw.com

---

## NOTICE OF REMOVAL

    Defendant Aerco International, Inc. files this Notice of Removal pursuant to 28 U.S.C. § 1446, and respectfully shows the following:

### INTRODUCTION

    1.    Plaintiff is Fluresh, LLC ("Fluresh").

2.     Defendants are Aerco International, Inc. ("Aerco") and R.L. Deppmann ("RL") (collectively, "Defendants").

3.     On or about March 14, 2022, Fluresh filed its original Complaint against Aerco and RL in the 17th Circuit Court for the County of Kent, Michigan, Case No. 2022-02325-CBB, styled *Fluresh, LLC v Aerco, Inc. and R.L. Deppmann*. Fluresh asserts both state-law and federal claims against Defendants for breach of contract, negligence, misrepresentation, breach of implied warranty, breach of express warranty, failure to warn, promissory estoppel and breach of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et. seq.*) concerning a piece of equipment installed at Fluresh's facility in the City of Adrian, County of Lenawee, Michigan.

4.     Fluresh served Aerco with its state-court Complaint on March 28, 2022.

## BASIS FOR REMOVAL

5.     Removal is proper under 28 U.S.C. § 1331 and § 1441 because Fluresh's Complaint is based in part on federal law, and the courts of the United States have original jurisdiction.

6.     Specifically, Fluresh asserts a cause of action under 15 U.S.C. § 2301 *et. seq.* the so-called "Magnuson-Moss Warranty Act," a federal statute.

7.     Per the terms of the Complaint, the amount in controversy exceeds $50,000, exclusive of interest and costs. *See* Complaint at ¶ 23, asserting damages in the approximate amount of Four Million Dollars ($4,000,000.00).

8.     Aerco may remove this case under 28 U.S.C. § 1441 because this Court has original jurisdiction over a claim made by Fluresh.

9.     The amount in controversy requirement of 15 U.S.C. § 2310(d)(3)(B) is satisfied, as Plaintiff's claim for $4,000,000.00 far exceeds the statutorily required amount of Fifty Thousand Dollars ($50,000.00).

10.     This Notice of Removal is timely filed within 30 days after receipt of the initial pleading, in accordance with 28 U.S.C. § 1446(b).

11.     Counsel for Aerco attempted to reach counsel for RL via telephone and electronic mail; however, no contact was established prior to the filing of this Notice. According to the Register of Actions for Kent County, RL has not yet been served with the Complaint. **Exhibit A, Kent County Register of Actions for State Court Matter**.

12.     Aerco will file a Notice of Filing Notice of Removal with the 17th Circuit Court for the County of Kent, Michigan, promptly after filing this Notice of Removal. Aerco will also provide prompt notice of the filing of this

Notice of Removal to all known counsel of record in accordance with 28 U.S.C. § 1446(d).

13.    Attached to this Notice of Removal are all executed process and all pleadings. No orders have yet been issued in the state court.

## CONCLUSION

Aerco respectfully requests that this action be removed from the 17th Circuit Court for the County of Kent, Michigan; that this Court accept jurisdiction over this action; and that Aerco be awarded all further relief to which it may be entitled.

Respectfully submitted,

**FOLEY, BARON, METZGER & JUIP, PLLC**

Dated: March 28, 2022          By: */s/Nicholas J. Tatro*
                                       Richard S. Baron (P33798)
                                       Nicholas Tatro (P79146)
                                       *Counsel for Defendant Aerco*
                                       *International, Inc.*
                                       38777 Six Mile Road, Suite 300
                                       Livonia, MI 48152
                                       (734) 742-1855
                                       Email: rbaron@fbmjlaw.com
                                       ntatro@fbmjlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 28, 2022, a copy of the foregoing instrument was served on the following counsel of record via First Class Mail in accordance with the Federal Rules of Civil Procedure:

Joslin E. Monahan (P77362)
**MILLER JOHNSON**
*Attorneys for Plaintiff*
45 Ottawa Avenue SW, Ste. 1100
P.O. Box 306
Grand Rapids, Michigan 49501-0306
(616) 831-1700
Email: monahanj@millerjohnson.com

Thomas J. Connick (0070527)
**CONNICK LAW LLC**
*Co-Counsel for Plaintiff*
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
(216) 364-0512
tconnick@connicklawllc.com

*/s/ Chery E. Ballew*
Cheryl E. Ballew

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FLURESH, LLC,

      Plaintiff,

-vs-

AERCO INTERNATIONAL,
INC. and R.L. DEPPMANN,

      Defendants.

Civil Action No.:

Hon.

*Removed from Kent County Circuit
Court, Case No.: 2022-02325-CBB*

---

Joslin E. Monahan (P77362)
**MILLER JOHNSON**
*Attorneys for Plaintiff*
45 Ottawa Avenue SW, Ste. 1100
P.O. Box 306
Grand Rapids, Michigan 49501-0306
(616) 831-1700
Email: monahanj@millerjohnson.com

Thomas J. Connick (0070527)
**CONNICK LAW LLC**
*Co-Counsel for Plaintiff*
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
(216) 364-0512
tconnick@connicklawllc.com

RICHARD S. BARON (P33798)
NICHOLAS J. TATRO (P79146)
**FOLEY, BARON, METZGER & JUIP, PLLC**
*Counsel for Defendant Aerco International*
38777 Six Mile Road, Suite 300
Livonia, Michigan 48152
(734) 742-1800
Email: rbaron@fbmjlaw.com;
ntatro@fbmjlaw.com

---

## <u>INDEX OF ITEMS ATTACHED</u>

1.    Summons and Complaint

| | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

Approved, SCAO

| **STATE OF MICHIGAN**<br>     **JUDICIAL DISTRICT**<br>KENT    **JUDICIAL CIRCUIT**<br>     **COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>22-**02325**-CB̶B |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 180 Ottawa Avenue NW, Grand Rapids, MI 49503 | 616.632.5220 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| FLURESH, LLC | v | AERCO INTERNATIONAL, INC.<br>100 Oritani Drive<br>Blauvelt, NY  10913-1022 |

| Plaintiff's attorney, bar no., address, and telephone no.<br>Joslin E. Monahan (P77362)<br>Miller Johnson<br>45 Ottawa Avenue SW, Suite 1100<br>Grand Rapids, MI  49503  /  616.831.1700 | Resident Agent:<br>820 Bear Tavern Road<br>West Trenton, NJ  08628 |
|---|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk. | **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>MAR 1 4 2022 | Expiration date<br>JUN 1 3 2022 | Court clerk<br>**LISA POSTHUMUS LYONS** |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**                               MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

STATE OF MICHIGAN

IN THE KENT COUNTY CIRCUIT COURT

FLURESH, LLC,

          Plaintiff,

v

AERCO INTERNATIONAL, INC and
R.L. DEPPMANN,

          Defendants.

CASE NO. 22- 02325 -CBB

HON.

CHRISTOPHER P. YATES
(P-41017)

---

Joslin E. Monahan (P77362)
MILLER JOHNSON
Attorneys for Plaintiff
45 Ottawa Avenue SW, Ste. 1100
P.O. Box 306
Grand Rapids, MI 49501-0306
616.831.1700
monahanj@millerjohnson.com

Thomas J. Connick (0070527)
Connick Law LLC
Forthcoming *Pro Hac Vice*
Co-Counsel for Plaintiff
25550 Chagrin Blvd., Suite 101
Beachwood, OH 44122
216.364.0512
tconnick@connicklawllc.com

---

## COMPLAINT

      Plaintiff states:

## THE PARTIES, JURISDICTION AND VENUE

    1.    Plaintiff, Fluresh, LLC ("Plaintiff" or "Fluresh") is a premier cultivator, grower,

processor, and supplier of premium-quality cannabis products, and is doing business in the County

of Kent, State of Michigan.

2.     Defendant AERCO International, Inc. ("AERCO") is a New York Corporation doing business in the County of Kent, State of Michigan, as a manufacturer/supplier of commercial boilers and water heaters including, without limitation, the subject *Innovation 800 Water Heater* ("Water Heater").

3.     Defendant R.L. Deppmann ("Deppmann") is a stocking manufacturer representative that sells boilers, water heaters, heat exchangers, among other products for HVAC and plumbing systems. Deppmann's services also include providing design assistance, system expertise, troubleshooting and other product information services. Deppmann is a business in the County of Kent, State of Michigan. Deppmann recommended and procured the Water Heater for Plaintiff's particularized use at its Adrian, Michigan manufacturing facility ("Facility").

4.     This matter involves a "business or commercial" dispute as that term is defined in MCL 600.8031 (West).

5.     The amount in controversy in this action exceeds $25,000.00 and is otherwise in this Honorable Court's subject matter jurisdiction.

6.     Venue is proper with this Honorable Court pursuant to MCL 600.1621 (West) and MCL 600.8035 (West).

## STATEMENT OF FACTS

7.     Fluresh is a designer/manufacturer and supplier of premium cannabis products. Fluresh designs, manufactures and supplies its cannabis products in strict compliance with quality and purity standards, which includes the absence of dangerous heavy metals, such as nickel. Fluresh also complies with strict testing standards imposed by the State of Michigan for cannabis products.

8.     Cannabis is a unique product because it is an accumulator plant. As such, it takes up materials from its environment. Heavy metals typically accumulate in the cannabis plant

2

through the root system. Water from contaminated sources can carry dangerous heavy metals that are then absorbed into the cannabis plant.

9.      Heavy metal contaminants, such as nickel, pose a health hazard to consumers of marijuana.[1]

10.      Fluresh retained the JDI group (Architects & Engineers) ("JDI") to assist in securing the appropriate reverse osmosis ("RO") water heater to ensure the filtering out of any contaminants, such as dangerous heavy metals, i.e. nickel into Fluresh cannabis plants.

11.      RO is a water purification technology that uses a semipermeable membrane to remove ions, molecules, and larger particles from water. The result is that the solute is retained on the pressurized side of the membrane and the pure solvent is allowed to pass to the other side.

12.      Fluresh directed JDI to select a water heater to heat the RO water supplied from the Fluresh outdoor storage tanks located at the facility from 40°F to 80°F.

13.      JDI contacted Gerry Potapa ("Potapa") of Deppmann, an AERCO representative, to verify that the AERCO Water Heater was suitable for RO water and complied with Fluresh's requirement to maintain RO water throughout its cannabis growing/manufacturing systems. Potapa informed JDI that AERCO applications confirmed that the AERCO Water Heater was suitable for RO water. As a result, JDI conformed its drawings to depict RO water heater design with the AERCO Water Heater.

14.      JDI provided updated drawings calling out an AERCO Water Heater suitable for RO water.[2]

---

[1] https://www.cannabisbusinesstimes.com/article/advanced-nutrients-heavy-metals-in-crops/
[2] See Drawings attached hereto as **Exhibit 1**.

15.     Thereafter, in approximately April of 2019, JDI selected a water heater system to heat the 80°F Fertigation Room RO water from the AERCO Water Heater to 150°F. HTP water heaters were then selected and installed in the Fertigation Room[3] for this purpose.

16.     The Technical Data Sheet ("TDS") issued by AERCO for the subject AERCO Water Heater expressly states that it is "*all stainless-steel construction*," and that it features a "*Stainless Steel Heat Exchanger*.[4]

17.     On or about December 26, 2019 New Age Laboratories produced a Laboratory Analytical Report analyzing RO water samples secured from the inlet and outlet of the AERCO Water Heater. The test results concluded that the Nickel level present in the RO water entering the Heater was at a level ≤0.025ppm; and that the RO water exiting the AERCO Heater measured at a level of 1.50ppm.[5]

18.     Upon investigation, it was determined that the AERCO Water Heater, in particular the Element/Heat Exchanger component, was not all stainless-steel construction and, in fact, was nickel plated and contained brass, bronze, copper and other metal components that lead to nickel leaching into the RO water supply, thereby contaminating significant amounts of Plaintiff's cannabis plant.

19.     The only source of Nickel leeching into the RO water was at the AERCO Water Heater, including the Heat Exchanger.

20.     On or about December 31, 2019 Tim Mitzel of Deppmann confirmed that AERCO Applications represented the AERCO Water Heater as being suitable for RO water.

---

[3] Fertigation is an automated nutrient delivery where fertilizer is injected into the irrigation water system.
[4] See AERCO Technical Data Sheet – Innovation 600-1350 Water Heaters, attached hereto as **Exhibit 2.**
[5] Attached hereto as **Exhibit 3.**

21.     Upon information and belief, Deppmann failed to engage in any investigation and/or confirmatory actions to confirm that the Water Heater and its components, including the Heat Exchanger were *all stainless-steel construction*.

22.     In January 2020 Plaintiff was required to replace new equipment to cure the Nickel leeching at a cost of approximately $43,000.00.

23.     Fluresh also incurred damages in the approximate amount of $4,000,000.00 for property damage to the cannabis product itself, as well as lost market value for approximately five (5) harvests of its cannabis.

## COUNT I - COMMON LAW BREACH OF CONTRACT

### (Deppmann and AERCO)

24.     Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

25.     Plaintiff entered into a Contract with Deppmann and AERCO for the purchase of the Water Heater.

26.     AERCO and its agent, Deppmann, had an affirmative obligation and duty to perform its contractual obligations which included, without limitation, providing a Water Heater of all stainless-steel construction that would not cause leaching of dangerous heavy metals, i.e. Nickel into Plaintiff's cannabis plants.

27.     Plaintiff complied with all terms and conditions precedent under the terms and conditions of the subject contract and, therefore, were and are entitled to all benefits contracted for under the terms and conditions of the contract.

28.     By no fault of their own, Plaintiff was required to dispose of all of its contaminated cannabis product that was tainted with Nickel due to Defendants' breach of contract.

29.     Plaintiff lost the benefit of its bargain.

5

30.     Defendants have refused and/or failed to fully and immediately pay Plaintiff for its damages.

31.     In addition, Defendants have violated the implied duty of good faith and fair dealing. Nonetheless, even absent the application of the implied covenant of good faith and fair dealing, Defendants still violated the express terms of the Contract.

32.     As a direct and proximate result of Defendants' breach of contract Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT II – USE IN NEGLIGENCE AGAINST
## (AERCO)

33.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

34.     At all relevant times AERCO owed a duty to Plaintiff to: (1) properly manufacture the Water Heater; (2) properly test and/or evaluate the Water Heater to ensure it did not leach heavy metals into Plaintiff's cannabis plants; and (3) to properly warn Plaintiff that the Water Heater's non-all stainless-steel construction would leach heavy metals including, without limitation, nickel, into Plaintiff's cannabis products.

35.     AERCO breached these duties and, as a result, the Water Heater was not reasonably safe when it left AERCO's control.

36.     When the Water Heater left AERCO's control, a technically feasible alternative component(s) and/or design was available that would have prevented the harm of leaching heavy metals into Plaintiff's cannabis plants.

6

37. As a direct and proximate result of Defendants' innocent/negligent misrepresentation Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT – III INNOCENT/NEGLIGENT MISREPRESENTATION

### (Deppmann and AERCO)

38. Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

39. "A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *Unibar Maint Services, Inc v Saigh*, 283 Mich App 609; 769 NW2d 911, 919 (2009).

40. For innocent misrepresentation, Fluresh need not show that the Defendants had a fraudulent purpose or intent on the Defendants' behalf, or even that the Defendants knew that the representation(s) was false.

41. Fluresh need only prove that it justifiably relied to its detriment on information prepared without reasonable care by Defendants, who owed Fluresh a duty of care.

42. Here, AERCO misrepresented in the TDS for the subject Water Heater that the Water Heater was made of "all stainless-steel construction," and in particular contained a "Stainless Steel Heat Exchanger."

43. AERCO had a duty to disclose and/or provide non-deceptive marketing of the Water Heater and/or the Element/Heat Exchanger component and knew and/or should have known that its TDS contained false and/or misleading information.

44. Similarly, Deppmann, as AERCO's agent and as an expert stocking manufacturer representative that sells boilers, water heaters, heat exchangers, among other products for HVAC

7

and plumbing systems, as well as engaging in design assistance, system expertise, troubleshooting and other product information services, had a duty of, among others, to use reasonable care to ensure that the Water Heater it recommended to and procured on behalf of Plaintiff was, in fact, made of "all stainless steel construction." Deppmann failed to do so and, in fact, misrepresented to Plaintiff that the Water Heater was constructed of all stainless steel and would conform to Plaintiff's requirement for RO water.

45.     Fluresh justifiably relied on Defendants' express representations, because Fluresh knew that it must have all stainless-steel construction of the Water Heater to ensure no leaching of dangerous heavy metals and relayed this requirement to the Defendants.

46.     Fluresh would not have purchased and/or used in its operations the subject water heater had it known that it was not, in fact, of all stainless-steel construction and/or that the heat exchanger component was not, in fact, made of all stainless steel.

47.     As a direct and proximate result of Defendants' innocent/negligent misrepresentation Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT IV - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE

### (AERCO)

48.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

49.     AERCO's Water Heater, and its components, are "goods" within the meaning of MCL 440.2105(1) (West).

50.     Plaintiff is a "buyer" within the meaning of MCL 440.2103(1)(a) (West).

8

51.     A warranty that goods shall be merchantable and fit for the ordinary and/or particular purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

52.     AERCO is a seller and merchant-manufacturer/supplier of boilers and water heaters including, without limitation, the subject Water Heater, within the meaning of MCL 440.2104(1) (West).

53.     AERCO holds itself out as having the knowledge and/or skill peculiar to the boiler/water heater industry.

54.     AERCO is engaged and has continuously engaged at all times relevant to this lawsuit in the business of selling, distributing, and handling parts of all kinds for boilers and water heaters, such as the subject Water Heater.

55.     At the time of contracting, AERCO had reason to know of the ordinary and/or particular purpose for which Plaintiff required the use of the Water Heater, i.e. for RO water to be used for cannabis growing and manufacture.

56.     Plaintiff, as the buyer of the Water Heater relied on AERCO's expertise, skill and/or judgment to select or furnish suitable goods, i.e. Water Heater for use in Plaintiff's RO fertigation process.

57.     AERCO's implied warranty that its Water Heater was merchantable was part of the basis of the bargain between AERCO and Plaintiff.

58.     Nothing from AERCO excluded and/or modified that the Water Heater was not otherwise fit for such intended purpose. In fact, AERCO represented in in its TDS for the Water Heater that it was made of all stainless steel, including the Heat Exchanger.

59.     AERCO had express reason to know that Plaintiff was relying on AERCO's expertise, skill, and judgment in supplying the Water Heater for Plaintiff's particular purpose of using the Water Heater in the cannabis growing/manufacture process.

60.     The Water Heater was in a defective condition and/or state when it left AERCO's possession in a condition that was not all stainless-steel construction.

61.     "[A] defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use." *Fire & Ice Mech, Inc v Bit Mat Products of Michigan*, unpublished opinion of the Court of Appeals, issued October 11, 2007 (Docket No. 269978), 2007 WL 2962800, p *4.

62.     The Water Heater was not fit for the ordinary and/or particularized purpose(s) for which it was used in Plaintiff's cannabis growing/manufacture process.

63.     The Water Heater failed to conform to the promises and/or affirmations of fact made by AERCO in its TDS.

64.     Thus, AERCO breached its implied warranty of merchantability and fitness for a particular purpose because the Water Heater was not fit for the ordinary and/or particularized purpose which it was used. Specifically, the Water Heater was not constructed of all stainless steel, which directly led to dangerous heavy metals, i.e. Nickel leaching into Plaintiff's cannabis plants.

65.     As a direct and proximate result of AERCO's breach of implied warranty of merchantability and/or fitness for particular purpose Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT – V NEGLIGENCE

### (Deppmann)

66.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

10

67.     Deppmann had a duty to ensure that the Water Heater, including its component parts, such as the Heat Exchanger, was made of all stainless-steel construction, so as to ensure that Plaintiff's cannabis plants would be protected against the leaching of dangerous heavy metals, i.e. Nickel, into its plants, thereby contaminating several of Plaintiff's cannabis harvests.

68.     Deppmann breached this duty by, among things, failing to exercise reasonable care to confirm that the Water Heater and its component parts were made of all stainless-steel construction.

**69.**     As a direct and proximate result of Deppmann's negligence Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT – VI NEGLIGENCE

### (AERCO)

70.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

71.     AERCO owed a duty to Plaintiff to design, manufacture, market and sell its Water Heater with reasonable care and in a workmanlike fashion.

72.     AERCO breached that duty by designing, manufacturing, and marketing the defective Water Heater.

73.     As a direct and proximate result of Deppmann's negligence Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

11

## COUNT – VII BREACH OF MAGNUSSON MOSS WARRANTY ACT (15 USCA 2301 (WEST), ET SEQ.

### (Deppmann and AERCO)

74.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

75.     The Water Heater that forms the subject matter of this action is a "consumer product" within the meaning of 15 USCA 2301.

76.     Plaintiff is a "consumer" within the meaning of 15 USCA 2301.

77.     Deppmann is a "supplier" of the Water Heater within the meaning of 15 USCA 2301.

78.     AERCO is a "Warrantor" of the Water Heater within the meaning of 15 USCA 2301.

79.     Defendants Deppmann and AERCO made written and implied warranties regarding the Water Heater to Plaintiff within the meaning of 15 USCA 2301.

80.     Defendants violated the Magnusson-Moss Warranty Act, 15 USCA 2301 *et seq.* ("Act") by failing to comply with the written and implied warranties they made to Plaintiff.

81.     As a direct and proximate result of Defendants' breach of the Act Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

82.     As a direct and proximate result of Defendants' breach of the Act Plaintiff is entitled to enhanced damages, attorney's fees and reasonable costs related to this action.

## COUNT – VIII BREACH OF EXPRESS WARRANTY

### (AERCO)

83.     Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

84.     AERCO is a "seller" within the meaning of MCL 440.2103(1)(d).

85.     AERCO's Water Heater, and its components, are "goods" within the meaning of MCL 440.2105(1).

86.     Plaintiff is a "buyer" within the meaning of MCL 440.2103(1)(a).

87.     In its TDS, AERCO expressly warranted and affirmed the fact and/or promise that the Water Heater was constructed of all stainless-steel and, therefore, fit for its ordinary intended use and/or particular purpose for which the Water Heater was to be used.

88.     AERCO's express warranties were part of the basis of the bargain between AERCO and Plaintiff.

89.     AERCO's representation was false, and the description of the Water Heater set out in AERCO's TDS did not conform with the true nature and condition of the Water Heater. Thus, AERCO breached its express warranty because the Water Heater was not fit for the ordinary and/or particularized purpose which it was used. Specifically, the Water Heater was not constructed of all stainless-steel, which directly led to dangerous heavy metals, i.e. Nickel leaching into Plaintiff's cannabis plants.

90.     Plaintiff relied upon AERCO's representation(s) and warranty that they would be supplied a Water Heater free of the defect(s) as alleged herein.

91.     Plaintiff notified AERCO of its breach.

92.     As a direct and proximate cause of AERCO's breach of express warranty, Plaintiff has incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT – IX BREACH OF IMPLIED WARRANTY

### (Deppmann)

93.     Plaintiff incorporates by reference all of the forgoing allegations as if fully rewritten herein.

94.     Deppmann as the non-manufacturer of the Water Heater failed to exercise the requisite reasonable care by recommending and procuring a Water Heater suitable for Plaintiff's use in its cannabis growing/manufacture process.

95.     Deppmann knew and/or should have known that the Water Heater was not completely constructed of all stainless-steel and, therefore, had the propensity to leach heavy metals, i.e. Nickel into Plaintiff's cannabis plants.

96.     Deppmann warranted to Plaintiff that the Water Heater was fit for its intended purpose and would not leach heavy metals, such as Nickel, into Plaintiff's cannabis plants through Plaintiff's RO Process when, in fact, it was not.

97.     As a direct and proximate result of Deppmann's breach of implied warranty due to its failure to exercise reasonable care in procuring and recommending the proper Water Heater for Plaintiff's intended use, Plaintiff incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT X – FAILURE TO WARN

### (Deppmann and AERCO)

98.     Plaintiff incorporates by reference all of the forgoing allegations as if fully rewritten herein.

99.     Defendants had a duty to warn of the foreseeable harm associated with the use of the Water Heater that it knew and/or should have known was not constructed of all stainless steel.

100.    Defendants had no reason to believe that Plaintiff would be aware of the foreseeable harms associated with the use of the Water Heater.

101.    Prior to distributing the Water Heater to Plaintiff, Defendants failed to provide appropriate instructions for the safe use of the Water Heater.

102.    Defendants had a legal duty to provide appropriate instructions for the safe use of the Water Heater, prior to distribution of said Water Heater.

103.    After distributing the Water Heater to Plaintiff, Defendants failed to warn Plaintiff about the defects in the Water Heater and the dangers that those defects would pose.

104.    After distributing the Water Heater to Plaintiff, Defendants had a legal duty to warn Plaintiff about the defects in the Water Heater and the dangers that those defects would pose.

105.    As a direct and proximate cause of Defendants' failure to warn, Plaintiff has incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.00.

## COUNT XI – PROMISSORY ESTOPPEL

### (Deppmann and AERCO

106.    Plaintiff incorporates by reference all of the forgoing allegations as if fully rewritten herein.

107.    Defendants, each of them, promised to deliver to Plaintiff an all-stainless steel Water Heater that would not leach heavy metals into Plaintiff's cannabis plants.

108.    Fluresh reasonably and justifiably relied upon Defendants' promises in this regard and which induced Fluresh to purchase and utilize in its manufacturing and growing processes the subject Water Heater.

15

109.    Because Fluresh in fact relied upon Defendants' promises; Defendants' promise should be enforced to avoid the injustice and/or cure the substantial damages incurred by Plaintiff due to its reliance on Defendants' promises.

110.    As a direct and proximate cause of Defendants' actions in this matter, Plaintiff has incurred significant damages including, without limitation, damage to the cannabis product itself, in excess of $25,000.

WHEREFORE, Plaintiffs respectfully requests of this Court the following relief, on behalf of themselves and all others similarly situated:

a.    An award of damages, including compensatory, exemplary, and statutory damages, to Plaintiff in an amount in excess of $25,000.00 to be more precisely determined at trial;

b.    Pre-judgment and post-judgment interest;

c.    Plaintiff's costs of suit, including, without limitation, their attorney's fees, expert fees, and actual incurred and costs; and

d.    Such other further relief, at law or in equity, as the Court deems just and proper.

MILLER JOHNSON
Attorneys for Plaintiff

Dated: March 10, 2022                 By _____
                                      Joslin E. Monahan (P77362)
                                      Business Address:
                                          45 Ottawa Avenue SW, Ste. 1100
                                          P.O. Box 306
                                          Grand Rapids, MI  49501-0306
                                      Telephone: 616.831.1700

16

# EXHIBIT 1





MAIN BUILDING PLUMBING PIPING PLAN



## FIXTURES, HYDRANTS, AND HOSE BIBBS

| MARK | DESCRIPTION | SERVICE | BASIS OF DESIGN: MANUFACTURER | BASIS OF DESIGN: MODEL TYPE | BASIS OF DESIGN: DESCRIPTION | ASSOCIATED COMPONENTS: DESCRIPTION | ASSOCIATED COMPONENTS: MANUFACTURER | ASSOCIATED COMPONENTS: MODEL | CONNECTIONS: SAN OR WASTE (S/W) | CONNECTIONS: VENT (V) | CONNECTIONS: COLD WATER (DCW) | CONNECTIONS: HOT WATER (DHW) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ESS-1 | EMERGENCY SAFETY STATION | RECEIVING / FUMIGATION EQUIP. | GUARDIAN | [illegible] | | | | | - | - | 1 1/4" | 1 1/4" | - |
| EWC-1 | WATER COOLER | TOILET AREA | ELKAY | [illegible] | 8 GPH CHILLING CAPACITY BI-LEVEL PUSHBAR ACTIVATION | ANGLE STOPS ESCUTCHEONS P-TRAP SUPPORT | [illegible] | [illegible] | 1-1/2" | 1-1/2" | 1/2" | - | - |
| MSB-1 | MOP SINK | JANITOR'S CLOSET | MUSTEE | [illegible] | DURASTONE FIBERGLASS 2.2 GPM FLOW | HOSE & HOLDER MOP HANGER FAUCET | MUSTEE MUSTEE CHICAGO FAUCETS | [illegible] | - | - | 1/2" | 1/2" | - |
| FWH-1 | FREEZELESS WALL HYDRANT | BUILDING EXTERIOR | WOODFORD | MODEL 65 [illegible] LENGTH | ANTI-SIPHON FREEZELESS CHROME [illegible] WALL THICKNESS [illegible] | - | - | - | - | - | 3/4" | - | - |
| L-1 | LAVATORY | BATHROOMS | KOHLER | KINGSTON [illegible] WALL MOUNTED [illegible] | THREE HOLE 0.5 GPM FLOW CONTROL | FAUCET OUTLET PLUG ANGLE STOPS ESCUTCHEONS P-TRAP LAV GUARD SUPPORT | [illegible] | [illegible] | 1-1/2" | 1-1/2" | 1/2" | 1/2" | - |
| SK-1 | SINK | BREAK ROOM | ELKAY | LUSTERTONE [illegible] TOP MOUNT [illegible] | STAINLESS STEEL SINGLE BOWL THREE HOLE DRILLINGS 1.5 GPM FLOW CONTROL | FAUCET STRAINER ANGLE STOPS ESCUTCHEONS P-TRAP LAV GUARD [illegible] | [illegible] | [illegible] | 1-1/2" | 1-1/2" | 1/2" | 1/2" | - |
| UR-1 | URINAL | BATHROOMS | KOHLER | [illegible] WALL MOUNTED [illegible] | WASHOUT URINAL 0.125 GPF | SUPPLY VALVE SUPPORT | SLOAN ZURN | REGAL [illegible] | 1-1/2" | 1-1/2" | 3/4" | - | - |
| WC-1 | WATER CLOSET | BATHROOMS | KOHLER | HIGHCLIFF ULTRA [illegible] ELONGATED FLUSHOMETER BOWL [illegible] | BOTTOM OUTLET 1.6 GPF | SUPPLY VALVE SEAT | SLOAN CHURCH | REGAL [illegible] | 4" | 2" | 1" | - | - |
| FWH-2 | WALL HYDRANT (NON-FREEZE) | EXTERIOR BUILDING [illegible] | JR SMITH | [illegible] | NON-FREEZE [illegible] VACUUM BREAKER AND [illegible] | - | - | - | - | - | 3/4" | - | - |

## BACKFLOW PREVENTION

| MARK | DESCRIPTION | SERVICE | BASIS OF DESIGN: MANUFACTURER | BASIS OF DESIGN: MODEL TYPE | BASIS OF DESIGN: DESCRIPTION | ASSOCIATED COMPONENTS: DESCRIPTION | ASSOCIATED COMPONENTS: MANUFACTURER | ASSOCIATED COMPONENTS: MODEL | CONNECTIONS: SAN OR WASTE (S/W) | CONNECTIONS: VENT (V) | CONNECTIONS: COLD WATER (DCW) | CONNECTIONS: HOT WATER (DHW) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BFP-1 | BACKFLOW PREVENTER | BUILDING | WATTS | [illegible] REDUCED PRESSURE ZONE [illegible] | LEAD FREE SIZE: 4" | AIR GAP | WATTS | [illegible] | - | - | 4" | - | - |

ACCEPTABLE MANUFACTURERS: [illegible]

## MIXING VALVE(S)

| MARK | DESCRIPTION | LOCATION (SERVICE) | BASIS OF DESIGN: MANUFACTURER | BASIS OF DESIGN: MODEL | CONNECTIONS: COLD WATER INLET (DCW) | CONNECTIONS: HOT WATER INLET (DHW) | CONNECTIONS: HOT WATER OUTLET (DHW) | CONNECTIONS: TEMPERED WATER OUTLET (TW) | PERFORMANCE DATA: FLOW (GPM) | PERFORMANCE DATA: PRESSURE DROP (PSI) | PERFORMANCE DATA: SET TEMPERATURE (°F) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TMV-1 | MASTER BUILDING HOT WATER | RECEIVING (MAIN FACILITY DOMESTIC) | [illegible] | [illegible] | 2" | 2" | 2" | - | [illegible] | [illegible] | [illegible] | - |
| TMV-2 | EMERGENCY EQUIPMENT | EMERGENCY EQUIPMENT (MAIN FACILITY DOMESTIC) | GUARDIAN | [illegible] | 1-1/4" | 1-1/4" | - | 1-1/4" | [illegible] | [illegible] | [illegible] | 1. |

ACCEPTABLE MANUFACTURERS: [illegible]

REMARKS:
1. [illegible]

## DOMESTIC WATER HEATER

| MARK | DESCRIPTION | LOCATION (SERVICE) | BASIS OF DESIGN: MANUFACTURER | BASIS OF DESIGN: MODEL | BASIS OF DESIGN: FUEL TYPE | BASIS OF DESIGN: FUEL REQUIREMENTS (V / PH / HZ / AMP / FLA) | BASIS OF DESIGN: WATER VOLUME (GAL) | BASIS OF DESIGN: MAX FLOW (GPM) | BASIS OF DESIGN: DIMENSIONS WEIGHT | BASIS OF DESIGN: TEMPERATURE RISE (DEG F) | ASSOCIATED COMPONENTS: DESCRIPTION | ASSOCIATED COMPONENTS: MANUFACTURER | ASSOCIATED COMPONENTS: MODEL | CONNECTIONS: COLD WATER (DCW) | CONNECTIONS: HOT WATER (DHW) | CONNECTIONS: NAT GAS (NG) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WTR-1 | WATER HEATER | RECEIVING (MAIN FACILITY DOMESTIC) | AERCO | INNOVATION [illegible] | NATURAL GAS / ELECTRIC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | EXP TANK MIX VALVE THERMOMETER RELIEF VALVE | AMTROL POWERS TRERICE WATTS | [illegible] GALLON CAPACITY | 2" | 2" | 1" | 1,2. |
| WTR-2 | WATER HEATER | RECEIVING (MAIN FACILITY DOMESTIC) | AERCO | INNOVATION [illegible] | NATURAL GAS / ELECTRIC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | MIX VALVE THERMOMETER RELIEF VALVE | POWERS TRERICE WATTS | [illegible] GALLON CAPACITY | 2" | 2" | 1" | 1,2. |

ACCEPTABLE MANUFACTURERS: [illegible]

REMARKS:
1. [illegible]
2. GAS PRESSURE REQUIREMENTS: [illegible]

## PIPING MATERIAL AND INSULATION

| ABBREVIATION | SYSTEM DESCRIPTION | SIZE RANGE | LOCATION | MATERIAL | FITTINGS | JOINTS | VALVES | INSULATION: REQUIRED | INSULATION: TYPE / DESCRIPTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| DCW DHW DHWR NPW | DOMESTIC COLD WATER DOMESTIC HOT WATER DOMESTIC HOT WATER RETURN NON-POTABLE WATER | 2" AND SMALLER | ABOVE GRADE | TYPE "L" HARD COPPER TUBING, ASTM B88 | WROUGHT COPPER | LEAD FREE SOLDER | BRONZE BALL [illegible] | YES | [illegible] CELLULAR GLASS OR 1" ELASTOMERIC W/ VAPOR BARRIER | 2 |
| | | | | SCHEDULE 80 PVC, ASTM [illegible] | PVC SOCKET OR THREADED FITTINGS | SOLVENT CEMENT | PVC BALL | YES | [illegible] CELLULAR GLASS OR 1" ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | STANDARD WEIGHT GALVANIZED, ASTM [illegible] | THREADED | THREADED | STEEL BALL VALVES | YES | [illegible] CELLULAR GLASS OR 1" [illegible] W/ VAPOR BARRIER | |
| | | 2 1/2" - 6" | ABOVE GRADE | TYPE "L" HARD COPPER TUBING, ASTM B88 | WROUGHT COPPER | LEAD FREE SOLDER | BRONZE BALL [illegible] | YES | [illegible] CELLULAR GLASS OR 1" ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | SCHEDULE 80 PVC, ASTM [illegible] | SOCKET FITTINGS | SOLVENT CEMENT | PVC BALL | YES | [illegible] CELLULAR GLASS OR 1" ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | GALVANIZED STEEL | THREADED OR GROOVED | THREADED OR GROOVED | STEEL BALL VALVES | YES | [illegible] CELLULAR GLASS OR 1" ELASTOMERIC W/ VAPOR BARRIER | |
| | | ALL | BELOW GRADE | TYPE "K" SOFT TUBING, ASTM B88 | BRAZED BLANKS | | | NO | - | |
| NG | NATURAL GAS | ALL | ABOVE GRADE | BLACK STEEL, SCHEDULE 40, TYPE E/ S, GRADE B, ASTM A53 / A106 | WELDED FOR HIGHER THAN 5 PSIG | | | NO | - | - |
| | | | | | WELDED / THREADED FOR 5 PSIG AND LESS | | | NO | - | |
| RO / DM | REVERSE OSMOSIS / IRRIGATION WATER | ALL | ALL | SCHEDULE 80, PVC, ASTM D1785 | SOCKET FITTINGS | SOLVENT CEMENT | | NO | - | - |
| SAN / V | SANITARY / WASTE VENT | ALL | ALL | PVC SCHEDULE 40 SOLID WALL DWV, ASTM D2665 | PVC SOCKET SCHEDULE 40 DRAINAGE PATTERN | SOLVENT CEMENT, ASTM D2564 | | NO | - | 1 |

REMARKS:
1. ACCEPTABLE MANUFACTURERS: CHARLOTTE PIPE, MUELLER, OR [illegible]
2. ACCEPTABLE MANUFACTURERS: [illegible]

| REV | DATE | DESCRIPTION | APPROVAL |
|---|---|---|---|
| 1 | 12/21/18 | [illegible] SUBMISSION | JDI |
| 0 | 12/07/18 | ISSUED FOR PERMIT/CONSTRUCTION | JDI |
| B | 11/20/18 | BMMR REVIEW | JDI |
| A | 08/31/18 | ISSUE FOR PROGRESS REVIEW | JDI |

the jdi group
architects & engineers
[illegible]

PROJECT TITLE: FLORESH - MAIN BUILDING, ADRIAN, MICHIGAN

DRAWING TITLE: PLUMBING SCHEDULES

| | | |
|---|---|---|
| DRAWN BY | GM | 08/27/18 |
| CHECKED BY | RAK | 11/12/18 |
| [illegible] | TEN | 08/27/18 |
| [illegible] | BMA | 08/27/18 |
| SCALE | NONE | |

PROJECT NO.: KLC18-001

DRAWING NO.: P-603

REV: 1



## FIXTURES, HYDRANTS, AND HOSE BIBBS

| MARK | DESCRIPTION | SERVICE | BASIS OF DESIGN: MANUFACTURER | MODEL TYPE DIMENSIONS | DESCRIPTION | ASSOCIATED COMPONENTS: DESCRIPTION | MANUFACTURER | MODEL | CONNECTIONS: SAN OR WASTE (S/W) | VENT (V) | COLD WATER (DCW) | HOT WATER (DHW) | [illegible] | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | EMERGENCY SAFETY STATION | RECEIVING / FILTRATION EQUIP. | GUARDIAN | [illegible] | | | | | - | - | [illegible] | [illegible] | - | - |
| [illegible] | WATER COOLER | TOILET AREA | ELKAY | [illegible] | [illegible] | ANGLE STOPS [illegible] | BRASSCRAFT [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | - | - | - |
| HB-1 | HOSE BIBB [illegible] | FERTIGATION & MOTHERS ROOM | [illegible] | | | - | - | - | - | - | - | - | [illegible] | - |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] FAUCET | [illegible] CHICAGO FAUCETS | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | - | |
| FPWH-1 | FREEZELESS WALL HYDRANT | BUILDING EXTERIOR | WOODFORD | MODEL [illegible] | ANTI-SIPHON FREEZELESS [illegible] WALL THICKNESS [illegible] | - | - | - | - | - | [illegible] | | - | |
| L-1 | LAVATORY | BATHROOMS | KOHLER | [illegible] WALL MOUNTED [illegible] | THREE HOLE [illegible] GPM FLOW CONTROL | FAUCET OUTLET PLUG ANGLE STOPS [illegible] P-TRAP LAV GUARD SUPPORT | KOHLER DEARBORN BRASS BRASSCRAFT JONES STEPHENS DEARBORN BRASS TRUEBRO [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | - | |
| SN-1 | SINK | BREAK ROOM | ELKAY | [illegible] TOP MOUNT [illegible] | STAINLESS STEEL SINGLE BOWL [illegible] GPM FLOW CONTROL | FAUCET STRAINER ANGLE STOPS [illegible] P-TRAP LAV GUARD FAUCET NECK TAILPIECE | ELKAY [illegible] BRASSCRAFT JONES STEPHENS DEARBORN BRASS TRUEBRO BRASSCRAFT DEARBORN BRASS | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | - | |
| UR-1 | URINAL | BATHROOMS | KOHLER | [illegible] WALL MOUNTED [illegible] | [illegible] | SUPPLY VALVE SUPPORT | SLOAN [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | - | |
| WC-1 | WATER CLOSET | BATHROOMS | KOHLER | [illegible] ELONGATED [illegible] | SIPHON OUTLET [illegible] GPF | SUPPLY VALVE SEAT | SLOAN CHURCH | [illegible] | [illegible] | [illegible] | [illegible] | | - | |
| [illegible] | WALL HYDRANT [illegible] | EXTERIOR BUILDING [illegible] | [illegible] | [illegible] | [illegible] | - | - | - | - | - | [illegible] | | - | |

## BACKFLOW PREVENTION

| MARK | DESCRIPTION | SERVICE | BASIS OF DESIGN: MANUFACTURER | MODEL TYPE [illegible] | DESCRIPTION | ASSOCIATED COMPONENTS: DESCRIPTION | MANUFACTURER | MODEL | CONNECTIONS: SAN OR WASTE (S/W) | VENT (V) | COLD WATER (DCW) | HOT WATER (DHW) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BFP-1 | BACKFLOW PREVENTER | BUILDING | WATTS | [illegible] REDUCED PRESSURE ZONE [illegible] | LEAD FREE SIZE: 4" | AIR GAP | WATTS | [illegible] | - | - | 4" | - | - |

ACCEPTABLE MANUFACTURERS: [illegible]

## MIXING VALVE(S)

| MARK | DESCRIPTION | LOCATION (SERVICE) | BASIS OF DESIGN: MANUFACTURER | MODEL | CONNECTIONS: COLD WATER INLET (DCW) | HOT WATER INLET (DCW) | HOT WATER OUTLET (DHW) | TEMPERED WATER OUTLET (TW) | PERFORMANCE DATA: FLOW (GPM) | PRESSURE DROP (PSI) | SET TEMPERATURE (°F) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | MASTER BUILDING HOT WATER | RECEIVING (MAIN FACILITY DOMESTIC) | LAWLER | [illegible] | [illegible] | [illegible] | [illegible] | - | [illegible] | [illegible] | [illegible] | - |
| [illegible] | EMERGENCY EQUIPMENT | EMERGENCY EQUIPMENT (MAIN FACILITY DOMESTIC) | GUARDIAN | [illegible] | [illegible] | [illegible] | - | [illegible] | [illegible] | [illegible] | [illegible] | 1. |

ACCEPTABLE MANUFACTURERS: LAWLER, GUARDIAN, OR [illegible]

REMARKS:

1. [illegible]

## WATER HEATER(S)

| MARK | DESCRIPTION | LOCATION (SERVICE) | BASIS OF DESIGN: MANUFACTURER | MODEL | FUEL TYPE | [illegible] | WATER VOLUME (GAL) | [illegible] | OPERATING WEIGHT | TEMPERATURE RISE (DEG F) | ASSOCIATED COMPONENTS: DESCRIPTION | MANUFACTURER | MODEL | CONNECTIONS: COLD WATER (DCW) | HOT WATER (DHW) | [illegible] | GAS (G) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | WATER HEATER | RECEIVING (MAIN FACILITY DOMESTIC) | AERCO | [illegible] | NATURAL GAS / ELECTRIC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | EXP TANK [illegible] THERMOMETER RELIEF VALVE | AMTROL [illegible] WATTS | [illegible] GALLON CAPACITY [illegible] | [illegible] | [illegible] | - | [illegible] | [illegible] |
| [illegible] | WATER HEATER | RECEIVING [illegible] | AERCO | [illegible] | NATURAL GAS | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | EXP TANK [illegible] | AMTROL [illegible] | [illegible] GALLON CAPACITY [illegible] | [illegible] | [illegible] | - | [illegible] | [illegible] |
| [illegible] | WATER HEATER | [illegible] | AERCO | [illegible] | NATURAL GAS / ELECTRIC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | EXP TANK [illegible] THERMOMETER RELIEF VALVE | AMTROL [illegible] WATTS | [illegible] GALLON CAPACITY [illegible] | - | - | [illegible] | [illegible] | [illegible] |

ACCEPTABLE MANUFACTURERS: [illegible]

REMARKS:

[illegible]

## PIPING MATERIAL AND INSULATION

| ABBREVIATION | SYSTEM DESCRIPTION | SIZE RANGE | LOCATION | MATERIAL | FITTINGS | JOINTS | VALVES | INSULATION: REQUIRED | TYPE / DESCRIPTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| DCW DHW DHWR NPW | DOMESTIC COLD WATER / DOMESTIC HOT WATER / DOMESTIC HOT WATER RETURN / NON-POTABLE WATER | [illegible] AND SMALLER | ABOVE GRADE | TYPE "L" HARD COPPER TUBING, ASTM B88 | WROUGHT COPPER | LEAD FREE SOLDER | BRONZE BALL [illegible] | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | SCHEDULE 80 PVC, ASTM D1785 | PVC SOCKET OR THREADED FITTINGS | SOLVENT CEMENT | PVC BALL | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | STANDARD WEIGHT GALVANIZED, ASTM A53 | THREADED | THREADED | STEEL BALL VALVES | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | [illegible] | ABOVE GRADE | TYPE "L" HARD COPPER TUBING, ASTM B88 | WROUGHT COPPER | LEAD FREE SOLDER | BRONZE BALL [illegible] | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | SCHEDULE 80 PVC, ASTM D1785 | SOCKET FITTINGS | SOLVENT CEMENT | PVC BALL | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | | | GALVANIZED STEEL | THREADED OR GROOVED | THREADED OR GROOVED | STEEL BALL VALVES | YES | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | |
| | | ALL | BELOW GRADE | TYPE "K" SOFT TUBING, ASTM B88 | BRAZED JOINTS | | | NO | - | |
| NG | NATURAL GAS | ALL | [illegible] | BLACK STEEL, SCHEDULE 40, TYPE E/S GRADE B | WELDED FOR HIGHER THAN [illegible] | | | NO | - | |
| [illegible] | REVERSE OSMOSIS / IRRIGATION WATER | ALL | ABOVE GRADE | SCHEDULE 80 PVC, ASTM D1785 | SOCKET FITTINGS | SOLVENT CEMENT | | SEE NOTE 3 | [illegible] CELLULAR GLASS OR [illegible] ELASTOMERIC W/ VAPOR BARRIER | 3,4 |
| | | | BELOW GRADE | [illegible] | | | | | | |
| SAN / V | SANITARY / WASTE VENT | ALL | ALL | PVC SCHEDULE 40 SOLID WALL DWV, ASTM D2665 | PVC SOCKET SCHEDULE 40 DRAINAGE PATTERN | SOLVENT CEMENT, ASTM D2564 | | NO | - | 1 |

REMARKS:

1. [illegible]
2. [illegible]
3. UNDERGROUND [illegible] PIPING [illegible] FROM THE MAIN BUILDING TO THE OUTDOOR TANK AND PUMP SYSTEM.
4. [illegible] WITHIN THE MAIN BUILDING [illegible] WHEN RUNNING [illegible] TO THE WATER HEATER.

| REV | DATE | DESCRIPTION | APPROVAL |
|---|---|---|---|
| 2 | [illegible] | BULLETIN [illegible] | [illegible] |
| 1 | [illegible] | [illegible] | [illegible] |
| 0 | 12/07/18 | ISSUED FOR PERMIT/CONSTRUCTION | [illegible] |
| B | 11/25/18 | [illegible] REVIEW | [illegible] |
| A | [illegible] | ISSUE FOR PROGRESS REVIEW | [illegible] |

the jdi group

architects & engineers

[illegible]

PROJECT TITLE: FLURESH - MAIN BUILDING, ADRIAN, MICHIGAN

DRAWING TITLE: PLUMBING SCHEDULES

| | | |
|---|---|---|
| DESIGNED BY | [illegible] | [illegible] |
| CHECKED BY | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] |

PROJECT NO.: KLC18-001

DRAWING NO.: P-603

REV: 2

# EXHIBIT 2



## Technical Data Sheet
# Innovation 600-1350 Water Heaters

The AERCO Innovation Water Heater utilizes state-of-the-art technology to easily meet highly diverse, demanding commercial and industrial hot water requirements in a compact and reliable condensing design. The durable high efficiency helical firetube heat exchanger is time tested to be impervious to thermal stress for an extended life. The all stainless steel construction maximizes longevity in the condensing application and the corrugated tubes increase effective heat transfer surface area for optimal thermal efficiencies up to 99%. Enhanced waterside flow distribution maintains constant minimum velocities across the heat exchanger; this keeps solids in suspension and greatly reduces scale dropout to maintain high efficiency performance and long life.

The advanced C-More control system of the Innovation incorporates dynamic feed-forward sensing for precise modulation of its turndown air/fuel delivery system. These controls fire the unit to accurately match load requirements and produce tight hot water outlet temperature control. C-More includes onboard multi-unit sequencing logic, eliminating a need for separate sequencing panel. Wasteful overshooting and cycling are virtually eliminated as is the need for storage tanks, mixing valves and other temperature averaging components in most applications. The set point is adjustable from 50°F to 190°F and control to +/- 4°F is easily achieved. Sidewall, through-the-roof, and sealed combustion capabilities provide broad installation flexibility. The small foot print, doorway size, and quiet operation make it ideal for retrofit. With its tight temperature control, high efficiency, reliability and longevity the AERCO Innovation is truly a unique and advanced design.



  

U.S. Patent No.: 9,243,848

## Features

- Precise Temperature Control +/- 4°F
- Fully Modulating
- Condensing Design
- Stainless Steel Heat Exchanger
- Compact, Space Efficient Design
- Natural Gas or Propane
- Outlet Water Temperature of 50° to 190°F
- UL, CUL Listed for Closet Installation on Combustible Flooring

- 160 PSIG ASME Working Pressure Certified
- Direct or Conventional Vent with PVC, CPVC, PP, or AL29-4C Materials
- Whisper quiet operation
- Remote Alarm Contacts
- Sealed Combustion
- UL, CUL Listed, FM Compliant, ASME Section IV (HLW) Stamped

## Specifications

| | INN 600 | INN 800 | INN 1060 | INN 1350 |
|---|---|---|---|---|
| Adjustable Temperature Control | 50°F to 190°F | | | |
| Ambient Temperature | 0°F to 130°F | | | |
| Accuracy | +/-4°F | | | |
| Input | 600,000 BTUH | 800,000 BTUH | 1,060,000 BTUH | 1,350,000 BTUH |
| Net Output | 552,000 BTUH | 736,000 BTUH | 975,000 BTUH | 1,242,000 BTUH |
| Turndown Ratio (up to) | 14:1 | 18:1 | 24:1 | 30:1 |
| Flue and Air Intake | 4" Diameter | 6" Diameter | | |
| Flue Material (per local code) | PVC, CPVC, PP or AL29-4C | | | |
| Water Inlet & Outlet | 2" NPT Male | | | |
| Gas Connection- Natural Gas | 1" NPT Male | | | |
| Gas Connection- Propane | 1/2" NPT Male | | 3/4" NPT Male | |
| Gas Pressure Requirements | 14" WC Max | | | |
| Gas Pressure Requirements (Nat. Gas) | 4" WC Minimum @ Full Load | | | |
| Gas Pressure Requirements (Propane) | 6" WC Minimum @ Full Load | | | |
| Maximum Continuous Water Flow | 50 GPM | | | |
| Condensate Connection | 3/4"NPT Female | | | |
| Maximum Condensate Flow | 4.5 GPH | 6 GPH | 8 GPH | 11 GPH |
| Pressure Rating | 160 PSIG @ 210°F | | | |
| NOx Emissions Certifications | SCAQMD, TCEQ | | | |
| Standard Listing & Approvals | UL, CUL, ASME, (HLW) | | | |
| Gas Train Options | FM Compliant or Factory Installed, Double Block and Bleed | | | |
| Electrical Requirements | 120VAC, Single Phase, 60 Hz 20 Amp (11 FLA) | | | |
| Water Pressure Drop @ 15 gpm | 1.25 psi | | | |
| Water Pressure Drop @ 30 gpm | 2 psi | | | |
| Water Volume | 25.3 gallons | 25.3 gallons | 22.0 gallons | 19.9 gallons |
| Weight, Installed | 980 lbs (dry), 1,202 lbs (wet) | 980 lbs (dry), 1,202 lbs (wet) | 1000 lbs (dry), 1,190 lbs (wet) | 1,050 lbs (dry), 1,222 lbs (wet) |
| Weight Shipping | 1,080 lbs | 1,080 lbs | 1,100 lbs | 1,150 lbs |



*A WATTS Brand*

Heat | Hot Water | Energy Recovery Solutions

AERCO International, Inc.  •  100 Oritani Drive  •  Blauvelt, NY 10913
USA: T: (845) 580-8000 • Toll Free: (800) 526-0288 • AERCO.com

© 2018 AERCO

# EXHIBIT 3

# LABORATORY ANALYTICAL REPORT

**NEWAGE Laboratories**
Science You Can Use
Partners You Can Trust

| | | |
|---|---|---|
| **Sample Submitted By:**<br>A. DUCKWORTH<br>FLURESH<br>2817 BEECHER ST.<br>ADRIAN      MI   49222 | **Data Reported To:**<br>A. DUCKWORTH<br>FLURESH<br>2817 BEECHER ST.<br>ADRIAN      MI   49222 | **NAL ACCT ID:**<br>NAL19-198<br><br>**Collected By:**<br>AARON DUCKWORTH |
| **Sample Name:** _____<br>RO HEATER INLET<br>**Date/Time Sampled:**<br>12/26/2019 11:15 | **NAL Sample ID #:**<br>1226191617FL-008<br>**Date/Time Received:**<br>12/26/2019 16:17 | **NAL SDG ID:**<br>1226191617FL<br>**Matrix:**<br>WATER |

| TEST PERFORMED | RESULT | UNITS | LOQ | TEST DATE/TIME | ANALYST | METHOD |
|---|---|---|---|---|---|---|
| **MI-10 Metals** | | | | | | |
| Arsenic (As) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Barium (Ba) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Cadmium (Cd) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Chromium, Total (Cr) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Copper (Cu) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Lead (Pb) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Nickel (Ni) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6016C |
| Silver (Ag) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Selenium (Se) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Zinc (Zn) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Mercury (Hg) | - | ppm | 0.0002 | | SDW | SW7470 |

The results reported apply solely to the sample analyzed.
This report may not be reproduced except in full without written permission of NEW AGE Laboratories.

Comments:

ND - Not Detected

- NAL holds certification under NELAC:2009, ISO 17025:2005, and meets the AOAC International Guidelines for Laboratories Performing Microbiological and Chemical Analyses of Food Standards.
- * NAL (Lab#9977) is certified by the MDEQ for this parameter.

Scott D. Wall
President/Technical Manager

1226191617FL-008

# LABORATORY ANALYTICAL REPORT

**NEWAGE Laboratories**
Science You Can Use
Partners You Can Trust

**Sample Submitted By:**
A. DUCKWORTH
FLURESH
2817 BEECHER ST.
ADRIAN          MI   49222

**Sample Name:**
RO HEATER OUTLET
**Date/Time Sampled:**
12/26/2019 11:10

**Data Reported To:**
A. DUCKWORTH
FLURESH
2817 BEECHER ST.
ADRIAN          MI   49222

**NAL Sample ID #:**
1226191617FL-007
**Date/Time Received:**
12/26/2019 16:17

**NAL ACCT ID:**
NAL19-198

**Collected By:**
AARON DUCKWORTH

**NAL SDG ID:**
1226191617FL

**Matrix:**
WATER

| TEST PERFORMED | RESULT | UNITS | LOQ | TEST DATE/TIME | ANALYST | METHOD |
|---|---|---|---|---|---|---|
| **MI-10 Metals** | | | | | | |
| Arsenic (As) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Barium (Ba) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Cadmium (Cd) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Chromium, Total (Cr) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Copper (Cu) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Lead (Pb) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Nickel (Ni) | 1.50 | ppm | 0.025 | 12/27/2019 | SDW | 6016C |
| Silver (Ag) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Selenium (Se) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Zinc (Zn) | <0.025 | ppm | 0.025 | 12/27/2019 | SDW | 6010C |
| Mercury (Hg) | - | ppm | 0.0002 | | SDW | SW7470 |

The results reported apply solely to the sample analyzed.
This report may not be reproduced except in full without written permission of NEW AGE Laboratories.

Comments:

ND - Not Detected

- NAL holds certification under NELAC:2009, ISO 17025:2005, and meets the AOAC International Guidelines for Laboratories Performing Microbiological and Chemical Analyses of Food Standards.
- * NAL (Lab#9977) is certified by the MDEQ for this parameter.

Scott D. Wall
President/Technical Manager

1226191617FL-007